IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| JAMES FICKEN and SUNCOAST FIRST TRUST,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CITY OF DUNEDIN, FLORIDA; and JENNIFER BRAMLEY, in her official capacity as the City Manager of the City of Dunedin,<br><br>　　　　Defendants. | Case No: 8:23-cv-02602<br><br>**Jury Trial Requested** |

**Complaint**

Plaintiffs James Ficken and Suncoast First Trust bring this Complaint against the City of Dunedin, Florida, and Jennifer Bramley, in her official capacity as the City Manager of the City of Dunedin. Plaintiffs allege as follows:

## Introduction

1. For over 150 years, the Civil Rights Act of 1871 has protected the rights of individuals to bring causes of action challenging alleged violations of federal law. Specifically, 42 U.S.C. § 1983 creates and protects an individual's right to sue State officials and municipalities in federal court. And 42 U.S.C. § 1988, enacted in 1976, provides an exclusive mechanism governing the recovery of attorney fees in those actions.

2. Supreme Court precedent has long recognized that Congress created a scheme pursuant to which individuals have a right to sue state officials and cities without fear of paying the defendants' attorney fees, so long as their claims are not "vexatious, frivolous, or brought to harass or embarrass the defendant." *Hensley v. Eckerhart*, 461 U.S. 424, 429 n.2 (1983). And the First Amendment similarly protects individuals' right to sue State officials and municipalities in federal court without fear of retribution.

3. This case is about whether Defendants violated Plaintiffs' constitutional and statutory rights by evading the strict requirements of Section 1988

and instead forcing them to pay $10,000 in attorney fees pursuant to a local resolution that purportedly allows the City to recover "administrative expenses."

## Parties

4. Plaintiff Suncoast First Trust is a Florida land trust and the owner of the property located at 1341 Lady Marion Lane, Dunedin, Florida 34698.

5. Plaintiff Jim Ficken is a natural person who resides on the property located at 1341 Lady Marion Lane, Dunedin, Florida, 34698. Ficken is the sole trustee of Suncoast First Trust and an indirect beneficiary of Suncoast First Trust.

6. Defendant City of Dunedin is a municipality incorporated under Chapter 165 of the Florida Statutes.

7. Defendant Jennifer Bramley is the City Manager of the City of Dunedin. She is sued in her official capacity only.

## Jurisdiction and Venue

8. Plaintiffs bring this civil rights lawsuit pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

9. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the claims arise under the Constitution and the laws of the United States.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendants reside within this District.

11. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**Factual Allegations**

I. **Plaintiffs' original Section 1983 lawsuit**

12. In 2019, Plaintiffs sued the City under 42 U.S.C. § 1983 to stop the City from foreclosing on Ficken's home (which is owned by Suncoast) after he was unable to pay tens of thousands of dollars the City had fined him for not mowing his yard. They asserted that the City had imposed excessive fines, in violation of the Eighth Amendment. Plaintiffs lost that lawsuit, after which the case was closed without the City seeking or recovering any attorney fees under 42 U.S.C. § 1988. *See Ficken v. City of Dunedin*, No. 8:19-cv-1210 (M.D. Fla.); *Ficken v. City of Dunedin*, 2022 WL 2734429 (11th Cir. Jul. 14, 2022) (per curiam). (The City did move for costs.)

13. Plaintiffs' lawsuit had alleged that the City relies on code enforcement as a means for revenue collection to pay municipal salaries and expenses, a practice which began following the foreclosure crisis in 2007. The suit was widely publicized, and Plaintiffs' allegations included quotations from City leaders, such as the City attorney's description of the code enforcement system as a "well-oiled machine," a former City Manager's statement that "the revenue is nice," and other officials' statements that enforcement is "the perfect way to" deal with foreclosed

and nuisance properties because it "covers your costs and whatever is left goes into reserves."

14. The *Tampa Bay Times* reported Plaintiffs' allegations in detail. The newspaper stated that "Dunedin has cracked down on code violations in recent years." It also interviewed the daughter of another Dunedin resident who was fined thousands of dollars by the City; the daughter said that Dunedin's enforcement practices were "just predatory on people who are A, elderly; B, travel a lot; or C, under some financial duress."[1] *The Miami Herald* reprinted the article, titling it "His lawn got too long after his mom died. After $30,000 in fines, he faces foreclosure."[2]

15. National media outlets also picked up the story. Plaintiffs' complaint was recounted by publications such as *The Washington Post*, *Insider*, and *Reason*.[3] Two months after Plaintiffs filed suit, *USA Today* published an exposé describing

---

[1] Kirby Wilson, *Dunedin fined a man $30,000 for tall grass. Now the city is foreclosing on his home.*, Tampa Bay Times, May 9, 2010, https://tinyurl.com/5bvwkm9d.

[2] Kirby Wilson, *His lawn got too long after his mom died. After $30,000 in fines, he faces foreclosure*, The Miami Herald, May 10, 2019, https://tinyurl.com/axt7hv35.

[3] Meagan Flynn, *His lawn overgrew while he was tending to his mom's estate. Now, he faces foreclosure and a $30,000 fine*, The Washington Post, May 13, 2019, https://tinyurl.com/3m9r448d; Michelle Mark, *A Florida city is trying to foreclose on a 69-year-old man's house because he let his grass grow too tall*, Insider, May 13, 2019, https://tinyurl.com/yc3kvtvn; Brian Doherty, *Florida City Tries To Steal an Elderly Man's House Over Uncut Grass*, Reason, https://tinyurl.com/ywtddhdd; *see also* John Stossel, *Mow Your Lawn or Lose Your House!*, YouTube, July 9, 2019, https://youtu.be/MjV2autXVTc.

several instances—including Ficken's—of massive fines imposed on homeowners by the City. One individual labeled the City's practices "'almost Gestapo-like.'"[4]

16. The media attention embarrassed the City. The City went so far as hiring a crisis public relations firm to help portray it in a better light, costing taxpayers $25,000.[5] It also unsuccessfully moved to strike many of Plaintiffs' allegations regarding its code-enforcement practices.

## II. Resolution 22-16

17. In response to Plaintiffs' lawsuit and the unflattering press, the City hired a consultant to review the City's processes for code enforcement.[6] The City acknowledged that "the events of the summer of 2019"—when Plaintiffs sued the City—prompted this review.[7]

---

[4] Kristine Phillips, *A Florida woman was fined $100,000 for a dirty pool and overgrown grass. When do fines become excessive?*, USA Today, July 19, 2019, https://tinyurl.com/45kb3bzs.

[5] Kylie McGivern, *Dunedin hires crisis PR firm after lawsuit surrounding uncut grass gains national attention*, ABC Action News: WFTS Tampa Bay, June 6, 2019, https://tinyurl.com/bdumhw4b.

[6] *See* Libby Hendren, *Consulting firm tells Dunedin to cap code enforcement fines, give amnesty*, WTSP, Feb. 4, 2020, https://tinyurl.com/5n876stu.

[7] Dunedin City Comm'n, Minutes of Mar. 16, 2021 Work Session at 27, https://tinyurl.com/3e446rbr.

18. Based on that review, the City eventually adopted a lien-reduction process. The Dunedin City Commission first considered such a process in March 2021, while Plaintiffs' suit was pending in the district court.

19. In May 2021, the City Commission enacted a one-year "amnesty program for . . . existing liens."[8] About one year later, on June 7, 2022, the City Commission codified the program in Resolution 22-16.[9]

20. The City Commission is the governing legislative body for the City.

21. Under Resolution 22-16, a Dunedin property owner whose property is subject to a code-compliance lien may submit an application for a lien reduction to the City Manager. Resolution 22-16 authorizes the City Manager to "approve requests for code compliance lien reductions." *Id.* § 2(i).

22. In reviewing a lien-reduction application, the City Manager determines whether the application meets certain disqualifying "threshold criteria." *Id.* § 2(e). If an application meets one of those criteria, then "a waiver or reduction of the lien shall not be granted." *Id.* An applicant may appeal the City Manager's adverse threshold determination by filing the appeal with the City Manager, who is then to

---

[8] Dunedin City Comm'n, Minutes of May 18, 2021 Work Session at 19, https://tinyurl.com/2bmzwh9n; *see also* City of Dunedin Resolution 21-09, https://tinyurl.com/yeynfymj.

[9] *See* City of Dunedin Resolution 22-16, https://tinyurl.com/mun6hkh6.

present a properly filed appeal to the Board of Adjustment and Appeals for final determination. *Id.* § 2(f).

23. If an application does not "warrant immediate denial" based on the threshold criteria, then the City Manager must consider three factors to "determine how much, if any, the amount the lien should be reduced." *Id.* § 2(g). Those factors include: (1) the gravity of the code violation, (2) the amount of time taken by the owner to come into compliance with the relevant code, and (3) whether the owner has previously had any code violations. *See id.* Possible findings for each factor are assigned a maximum lien reduction amount (by percentage). *See id.* The City Manager may also take into consideration the property owner's financial ability to pay the lien. *Id.* § 2(h).

24. Based on the City Manager's findings as to each of those factors, the City Manager may "reduce the amount of the lien by a maximum of $50,000 less administrative expenses." *Id.* § 2(i).

25. Resolution 22-16 does not provide a mechanism to appeal the City Manager's determination regarding the amount by which the lien is reduced, including the amount added as "administrative expenses."

### III. The City uses Resolution 22-16 to impose $10,000 in attorney fees it purportedly incurred during Plaintiffs' Section 1983 action.

26. As of February 2023, when Plaintiffs' Section 1983 action had ended, the balance on Plaintiffs' lien was $35,562.13. As they were entitled to, Plaintiffs

8

(under Ficken's name) applied for a reduction of the lien under Resolution 22-16. Plaintiffs were entitled to: (1) a 50% reduction because the code violations were minor; and (2) a 30% reduction because they came into compliance within six months.

27. On April 17, 2023, the City informed Ficken that it had granted the application for a lien reduction. The City Manager determined that Plaintiffs were entitled to an 80% reduction of the lien, which should have brought the total down to $7,112.43.

28. But the City Manager added what she described as "administrative expenses" of $25,074, plus $14.50 for the fee to record the release of the lien.

29. According to the City's attorney, the vast majority of these "administrative expenses"—$25,000, or all but $88.50—represented "the amount the City had to pay out as a deductible to its insurance defense of its lien" in court.

30. To release the lien, therefore, the City ordered Plaintiffs to pay $32,200.93, which was more than four times the reduced amount if the City had not sought to recover its "deductible," and almost as much as the amount Plaintiffs owed even without any reduction.

31. A deductible represents the amount of a financial expense for which an insurer will not reimburse the policyholder and that the policyholder must pay. *See, e.g.*, *Deductible*, *New Oxford American Dictionary* (3d ed. 2010) ("a specified

9

amount of money that the insured must pay before an insurance company will pay a claim"); *Deductible*, *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/deductible (last visited Nov. 14, 2023) ("the amount of financial loss specified in an insurance policy that the insurer will not be held responsible for and that the insurance holder must pay").

32. The City's "deductible" represents the portion of the City's fees incurred in defending against Plaintiffs' Section 1983 action that the City's insurer did not pay for and that the City was required to pay itself.

33. The City sought to impose its attorney fees on Plaintiff in this roundabout way because it could not have recovered them under 42 U.S.C. § 1988, since Plaintiffs' Section 1983 lawsuit was not vexatious, frivolous, or brought to harass or embarrass the City. The City also sought to retaliate against Plaintiffs for bringing the lawsuit and to discourage Plaintiffs and other Dunedin residents from bringing similar lawsuits.

34. The purported statutory basis for the City's authority to collect attorney fees under Resolution 22-16 authorizes the imposition of "additional fines to cover all costs incurred by the local government in enforcing its codes." Fla. Stat. § 162.09(2)(d). But the statutory term "costs" in Section 162.09(2)(d) does not encompass attorney fees, much less ones incurred in a separate legal proceeding.

35. To Plaintiffs' knowledge, Defendants have argued that attorney fees are "costs" and "administrative expenses" subject to imposition under Section 162.09 and Resolution 22-16 only in response to Plaintiffs' highly publicized lawsuit against the City.

36. Further, even if Florida law and Resolution 22-16 permit the recovery of attorney fees incurred in some circumstances, using Resolution 22-16 to recover attorney fees incurred in Plaintiffs' Section 1983 lawsuit violated Plaintiffs' rights under the Civil Rights Act and the First Amendment.

37. Plaintiffs sought to challenge the administrative-expenses determination by the City Manager. In a letter to the City's attorney, Plaintiffs' counsel disputed the $25,000 charge for the City's "deductible," explaining that the charge violated the Civil Rights Act.

38. In response, the City asserted that Plaintiffs lacked any right to even challenge the City Manager's calculation of the reduced lien. According to the City, there was no mechanism to dispute the charge, and any appeal rights under Resolution 22-16 were limited to findings regarding the "threshold criteria," Dunedin Res. 22-16 § 2(e)—meaning the reduction itself, rather than the amount of attorney fees or other purported "administrative expenses" imposed on Plaintiffs.

39. In the same communication, the City backtracked from its initial attempt to impose $25,000 in attorney fees on Plaintiffs. The City represented that

the amount of the City's "deductible" had somehow been miscalculated, and that Plaintiffs could remove the lien by paying $10,000 in attorney fees.

40. Accordingly, the City recalculated the amount to release the lien—now $17,200,93 (the reduced lien plus $10,088.50)—and gave Plaintiffs 90 days to pay it. Otherwise, the lien would revert to the original amount of $35,562.13.

41. On August 14, 2023, Plaintiffs paid the City $7,200.93. That is, Plaintiffs paid the lien except for the disputed $10,000 in attorney fees.

42. The same day, the City's attorney notified Plaintiffs that a $10,000 balance remained on the lien and that Plaintiffs had three days to transmit those funds or the lien would revert to the *entire* original amount—$35,562.13. Plaintiffs' attorney asked for an extension of the deadline so that the attorneys could continue their discussions over the legality of the charge, but the City refused.

43. To avoid the lien's reversion to the original $35,562.13, Ficken scrambled to come up with the money the City demanded. To obtain sufficient funds, Ficken overdrew his bank account—causing interest charges to accrue and leaving him without any funds for basic home repairs—and traded and sold several of his stocks from a limited portfolio, incurring losses in doing so. After exhausting every resource Ficken had at his disposal, Plaintiffs paid the City $10,000 on August 17.

12

44. Based on publicly available information, and to Plaintiffs' knowledge, the City has not imposed over $500 in "administrative expenses" on any other applicant for a lien reduction pursuant to Resolution 22-16.

**Count 1 (Civil Rights Act)**

45. Plaintiffs re-allege and incorporate by reference paragraphs 1–12, 17–33, 35–37, and 39–43.

46. The Civil Rights Act of 1871 authorizes individuals to sue State officials and municipalities to vindicate rights secured by the U.S. Constitution and laws. 42 U.S.C. § 1983. Because the Act confers an individual right to sue for violations of federal rights, a State or local government actor's interference with that right is actionable under Section 1983.

47. An individual's right to sue under the Civil Rights Act is effectuated and protected in part by the Act's fee-shifting provision, 42 U.S.C. § 1988(b). So as not to discourage the vigorous enforcement of federally protected rights, the statute permits a prevailing defendant to recover attorney fees "only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant." *Hensley v. Eckerhart*, 461 U.S. 424, 429 n.2 (1983).

48. Plaintiffs exercised these rights by filing a complaint against the City for alleged violations of their Eighth and Fourteenth Amendment rights. Although

Plaintiffs lost that lawsuit, the Civil Rights Act prohibited the City from recovering its attorney fees because Plaintiffs' claims were not vexatious, frivolous, or brought to harass or embarrass the City.

49. The City's imposition of attorney fees as purported "administrative expenses" under Resolution 22-16 violated Plaintiffs' rights under the Civil Rights Act.

50. The City Manager's decision to impose those fees was pursuant to an official policy or custom of the City and was the final decision of the City for which the City is liable.

51. The violation was knowing and willful because Defendants were well aware of the limitations that Section 1988 imposes on a defendant's ability to recover attorney fees and chose to violate Plaintiffs' rights anyway.

52. Accordingly, Plaintiffs are entitled to compensatory and punitive damages and other appropriate relief. In the alternative to compensatory damages, Plaintiffs are entitled to restitution.

**Count 2 (First Amendment)**

53. Plaintiffs re-allege and incorporate by reference paragraphs 1–36 and 39–44.

54. The First Amendment prohibits a municipality and its officials from retaliating against an individual for exercising his right to "to petition the

Government for a redress of grievances," including the right to access the courts. U.S. Const. amend. I.

55. The City's demand that Plaintiffs pay the attorney fees the City incurred in the course of Plaintiffs' lawsuit against the City was retaliation for bringing the lawsuit and causing the City unfavorable media attention.

56. The City singled Plaintiffs out for adverse treatment. The City's use of Resolution 22-16 to recover attorney fees appears to be unique to Plaintiffs' case and is inconsistent with generally understood principles of Florida law and civil rights litigation of which the City was well aware.

57. The City would not have required Plaintiffs to pay $10,000 in attorney fees absent the retaliatory motive.

58. Accordingly, the City's requirement that Plaintiffs pay $10,000 in attorney fees related to their Section 1983 lawsuit violated the First Amendment.

59. The City Manager's decision to impose those fees was pursuant to an official policy or custom of the City and was the final decision of the City, for which the City is liable.

60. Accordingly, Plaintiffs are entitled to compensatory and punitive damages and other appropriate relief. In the alternative to compensatory damages, Plaintiffs are entitled to restitution.

## Count 3 (Procedural Due Process)

61. Plaintiffs re-allege and incorporate by reference all of the allegations contained in paragraphs 1–12, 17–34, and 37–44.

62. The Fourteenth Amendment requires that municipalities provide procedural due process before depriving someone of property.

63. Plaintiffs have a property interest in the $10,000 that the City imposed in attorney fees. Although the lien itself was upheld (and then reduced to $7,112.43), the City needed to establish that it had proper grounds to charge Plaintiffs administrative expenses because they are "*additional* fines." Fla. Stat. § 162.09(2)(d) (emphasis added). The $10,000 charge was not part of the lien itself.

64. To impose $10,000 in attorney fees (or other "administrative expenses"), the City was required to provide Plaintiffs with due process, including a meaningful opportunity to be heard. That is, Plaintiffs had a constitutional right to contest these additional charges.

65. The City provided Plaintiffs no opportunity to contest the $10,000 charge in any manner, much less a manner that complied with the Due Process Clause. For example, and solely for the purpose of illustration, Plaintiffs had no opportunity to challenge the City's assertion that it incurred $10,000 as a "deductible," or to determine why the City's initial charge ($25,000) was so much higher.

66. Plaintiffs' property interest in the $10,000 is significant.

67. In contrast, the City has no cognizable interest in recovering its purported administrative expenses without providing the bare minimum procedural protections required by the Constitution.

68. The risk of an erroneous deprivation without providing any opportunity to contest the charges was high, as evidenced by the City's shifting story as to the amount of its purported "deductible."

69. It would not have been a significant burden for the City to provide Plaintiffs an opportunity to contest the amount of the charge or its legality under federal and State law, either before or after the City took the money. Providing minimal due process would significantly lower the risk of an erroneous deprivation. Accordingly, the Fourteenth Amendment required the City to provide Plaintiffs with at least some manner in which to contest the charge.

70. Because Resolution 22-16 allows the City to charge a property owner administrative expenses without due process and the City did not allow Plaintiffs any procedural protections, the Resolution violates the Fourteenth Amendment both on its face and as applied.

71. The failure to provide due process was pursuant to an official policy or custom of the City and was the decision of the City Manager for which the City is liable.

72. The violation was knowing and willful because Defendants knew they were providing Plaintiffs with no procedural protections and that there was a serious risk of an error.

73. Accordingly, Plaintiffs are entitled to compensatory and punitive damages and other appropriate relief. In the alternative to compensatory damages, Plaintiffs are entitled to restitution.

## Prayer for Relief

Plaintiffs respectfully requests that the Court award the following relief:

a. Compensatory damages or, alternatively, restitution;

b. One dollar in nominal damages;

c. Punitive damages;

d. A declaratory judgment that the City's charge of $10,000 in attorney fees reflected an official policy or custom of the City and violated Plaintiffs' right to sue under 42 U.S.C. § 1983;

e. A declaratory judgment that the City's charge of $10,000 in attorney fees reflected an official policy or custom of the City and violated the First Amendment;

f. A declaratory judgment that the lack of an opportunity to challenge the City's imposition of "administrative expenses" under Resolution 22-16 reflects an official policy or custom of the City and that the City's

charge of $10,000 in attorney fees without an opportunity to be heard constituted a deprivation of procedural due process, in violation of the Fourteenth Amendment;

g. An award of fees and costs; and

h. Any other legal or equitable relief the Court deems just and proper.

November 14, 2023                    Respectfully submitted,

/s/ Ari S. Bargil
Ari S. Bargil (FL Bar No. 71454)          Helgi C. Walker*
  *Lead Counsel*                          Matt Gregory*
Institute for Justice                     Christian Dibblee*
2 South Biscayne Boulevard                Gibson, Dunn & Crutcher LLP
Suite 3180                                1050 Connecticut Avenue N.W.
Miami, FL 33131                           Washington, DC 20036
(305) 721-1600                            (202) 955-8500
abargil@ij.org                            hwalker@gibsondunn.com
                                          mgregory@gibsondunn.com
                                          cdibblee@gibsondunn.com

                                          *Motions for admission pro hac vice forthcoming*

                    *Counsel for Plaintiffs*

19